IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ROBERT ADAMS                                                                                    PLAINTIFF

v.                                          CIVIL NO. 13-5087

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Robert Adams, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on August 30, 2010, alleging an inability to work since October 15, 1999, due to fingers missing on the right hand, and being a slow learner. (Tr. 119, 127, 165). For DIB purposes, Plaintiff maintained insured status through March 31, 2001. (Tr. 18, 129). An administrative hearing was held on March 1, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 37-58).

By written decision dated May 9, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 21). Specifically, the ALJ found Plaintiff had the following severe impairments: a disorder of the right hand; an adjustment disorder with depressed mood, chronic; mild mental retardation; a personality disorder, NOS; antisocial traits; alcohol abuse; and, a disorder of the left eye. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 21). The ALJ found that based upon all of Plaintiff's impairments including the substance use disorder, Plaintiff retained the residual functional capacity (RFC) to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant could frequently handle and finger with his right hand. He could not do work that required excellent vision. He could do work that was limited to simple, routine and repetitive tasks, involving only simple, work related decisions with few, if any, workplace changes and no more than incidental contact with co-workers, supervisors and the general public. The claimant would be off-task approximately one-third of the workday.

(Tr. 23). With the help of a vocational expert, the ALJ determined that based on all of Plaintiff's impairments including a substance use disorder, there were no jobs available that Plaintiff could perform. (Tr. 26).

The ALJ found that excluding Plaintiff's substance use, the remaining impairments would cause more than a minimal impact on Plaintiff's ability to perform basic work activities. (Tr. 27). The ALJ found that if Plaintiff stopped the substance use, Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments

found in Appendix I, Subpart P, Regulation No. 4. (Tr. 27). The ALJ determined that if Plaintiff stopped the substance use, Plaintiff maintained the RFC to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant could frequently handle and finger with his right hand. He could not do work that required excellent vision. He could do work that was limited to simple, routine and repetitive tasks, involving only simple, work related decisions with few, if any, workplace changes and no more than incidental contact with co-workers, supervisors and the general public.

(Tr. 29). With the help of a vocational expert, the ALJ found that if Plaintiff stopped the substance use, Plaintiff would be able to perform work as an industrial cleaner, a machine tender, and a bindery machine feeder and off-bearer. (Tr. 31).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 18, 2013. (Tr. 3-8).[1] Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10,11).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.  Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d

---

[1] By letter dated March 5, 2013, the Appeals Council extended Plaintiff's time within which to file a civil action for sixty days. (Tr. 2).

964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national

economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**III.    Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ erred in determining that Plaintiff was not disabled if he were to stop his substance use; 2) the ALJ erred in finding Plaintiff did not meet the requirements of Listing 12.05(c); 3) the ALJ's RFC determination fails to give proper weight to the opinions of Drs. Tad Michael Morgan, James E. Kelly, III, and Scott McCarty; and 4) the ALJ's erred in relying on the vocational expert's testimony, as this testimony conflicted with the Dictionary of Occupational Titles (DOT).

**A.    Insured Status:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on March 31, 2001. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of October 15, 1999, his alleged onset date of disability, through March 31, 2001, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months

or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir.2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

      **B.**      **Alcohol Use a Contributing Factor**:

An individual is not entitled to benefits if alcoholism or drug addiction would be a contributing factor material to the determination of disability. 42 U.S.C. § 1382c(a)(3)(J). The process for the ALJ to follow when there is medical evidence of drug addiction or alcoholism is set forth in 20 C.F.R. § 416.935(b):

> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism. (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>>
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

AO72A
(Rev. 8/82)

Plaintiff has the burden to prove that alcoholism or drug addiction is not a contributing factor. Kluesner v. Astrue, 607 F.3d 533, 537 (8th Cir. 2010). "'If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow.'" Id. (quoting Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003).

A review of the record revealed that with the exception of Plaintiff's treatment for his right hand impairment by Dr. James E. Kelly, III, Plaintiff had very little medical treatment during the relevant time period. From July of 2005, through September of 2009, Plaintiff was an inmate in the Arkansas Department of Corrections, and the treatment records from that time period show that Plaintiff was assessed on intake as having a right hand impairment, and was placed on duty that did not require the use of his right hand. Plaintiff's medical treatment during this time was for fairly routine health problems such as congestion, dental problems, blood pressure monitoring, acid reflux, occasional back pain, and poor fitting shoes. These records indicated that Plaintiff was able to work in the kitchen, and that Plaintiff requested more supportive shoes because he was on his feet all day. (Tr. 326). The evidence as a whole supports the ALJ's finding that when Plaintiff abstained from alcohol use he was able to perform basic work-like tasks.

Plaintiff underwent a consultative mental evaluation on October 26, 2010, performed by Dr. Scott McCarty. (202-205). Dr. McCarty noted that Plaintiff reported that he had felt depressed ever since his incarceration and because he was unable to find a job. Plaintiff also reported good social relationships and indicated that being around people made him happy. Dr. McCarty noted that Plaintiff revealed antisocial personality traits of significant legal

-7-

involvement, and consistent irresponsibility in terms of maintaining employment and consistent housing. Plaintiff reported that he was incarcerated after his fourth driving while intoxicated conviction, but also estimated that he had been arrested around twenty times for public intoxication charges from the age of 17 until 20. Plaintiff also reported that he drank "only" on the weekend with his friends, but also admitted that if he had sufficient money he would purchase alcohol. (Tr. 203). Dr. McCarty opined that Plaintiff's alcohol abuse and intellectual issues appeared to present significant limitations in the area of personal responsibility involving driving and money. Dr. McCarty further opined that given Plaintiff's alcohol dependence and intention to buy alcohol if given money, and his limited arithmetic skills, Plaintiff would need supervision in managing funds.

At the administrative hearing on March 1, 2012, Plaintiff testified that he was drinking "about a 12-pack a day," but later testified that he was drinking less. (Tr. 40). Plaintiff testified that his disabled girlfriend drove him around to his friends houses to drink. (Tr. 41). Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff's alcohol use was a contributing factor material to the disability determination, and that if Plaintiff stopped this substance use, he would not be disabled.

### C.   Listing Impairment 12.05C:

Under Listing 12.05C, a claimant suffers from the required severity of mental retardation if he shows a valid verbal, performance, or full scale IQ of 60 through 70, with an onset prior to age 22, and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C; McNamara v. Astrue, 590 F.3d 607, 611 (8th Cir. 2010). When trying to establish that the Listing 12.05C

requirements have been met, the claimant must also meet the requirements in the introductory paragraph of Listing 12.05. Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006). Those requirements clearly include demonstrating that the claimant suffered "deficits in adaptive functioning" and that those deficits "initially manifest during the developmental period [before age 22]." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05; Cheatum v. Astrue, 388 Fed. Appx. 574, 576 (8th Cir. 2010)(citations omitted).

The Court finds, based upon the well-stated reasons outlined in the Defendant's brief, that Plaintiff's argument is without merit, and there was sufficient evidence for the ALJ to make an informed decision. A review of the record revealed that Plaintiff was able to hold down a job, to shop independently, to take care of his personal needs with some difficulty due to his right hand, to cook at a friend's house, and to use public transportation. Therefore, the Court finds there is substantial evidence of record to support the ALJ's finding that Plaintiff did not meet Listing 12.05C.

### D.   ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's

determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform medium work with limitations when Plaintiff stopped the substance use. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of examining and non-examining medical professionals, including the opinions of Drs. McCarty, Tad Michael Morgan, Cheryl Woodson-Johnson, Dan Gardner, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

With regard to Plaintiff's right hand, a review of the record revealed that in January of 2000, Dr. Kelly, opined that Plaintiff was restricted to light work for eight weeks. (Tr. 284). By May 10, 2000, Plaintiff's hand injury was noted to have improved dramatically, and Dr. Kelly indicated Plaintiff could make a full fist. (Tr. 276). On May 22, 2000, Dr. Kelly gave Plaintiff a total impairment of ten percent for Plaintiff's right hand. (Tr. 275). The ALJ discussed this evidence when determining Plaintiff's RFC. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

### E.     Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, and the Defendant's well-stated reasons set forth in his brief, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors.  In a Function Report dated September 23, 2010, Plaintiff reported that he lived in a tent in the woods.  (Tr. 143-150).  Plaintiff reported that he was unable to find a job due to his hand and fingers.  Plaintiff indicated that he spent his day walking around or riding around with friends.  Plaintiff reported that he could take care of his personal needs, but had some difficulty as he was right-handed and needed to use his left hand for most activities.  Plaintiff indicated that he received food stamps and would purchase food and then go to a friend's house to cook.  Plaintiff indicated that he could use public transportation.  Plaintiff reported that his impairments affected the use of his hands and his concentration, but noted that he could pay attention for "as long as it takes."  Plaintiff testified at the administrative hearing that after his hand injury he worked for Casa Taco in 2001 as a prep cook, and was paid

-11-

partially "under the table." (Tr. 45). Plaintiff testified that he stopped working at Casa Taco after he received his settlement check for his hand injury from his previous employer, and his boss at Casa Taco declined to give him a pay raise after working there for over a year. (Tr. 44). Plaintiff testified at the administrative hearing that he had met his girlfriend in December of 2011, and that he now lived with her and her parents. (Tr. 40-41).

With regard to Plaintiff's physical impairments, the ALJ noted that Plaintiff failed to seek consistent treatment for his alleged pain, and that Plaintiff was not taking prescribed medication for his alleged disabling pain. Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir.1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and daily activities). As for Plaintiff's alleged mental impairments, the record revealed that Plaintiff failed to seek on-going and consistent treatment. The record further revealed that Plaintiff testified that he was able to work as a prep cook for over a year, and that he was able to purchase a vehicle and a trailer home after he received his settlement check from his previous employer. (Tr. 49).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability). Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**F.     Program Operations Manual System (POMS) § 25020.010 (A)(3)(b)**:

Plaintiff argues that the ALJ's decision violates POMS § 25020.010 (A)(3)(b). The section provides, in relevant part, that the basic mental demands of competitive, remunerative,

AO72A
(Rev. 8/82)

unskilled work include the abilities on a sustained basis to understand, carry out, and remember simple instructions, and make judgments that are commensurate with the functions of unskilled work. See POMS DI § 25020.010(A)(3)(a). The section also provides that a substantial loss of ability to meet any of these basic mental demands severely limits the potential occupational base and this would justify a finding of inability to perform other work. See id. The section further notes that the mental abilities critical for performing unskilled work include, among other things, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. See POMS DI § 25020.010(B)(3)(i).

Plaintiff argues that a fully favorable decision is appropriate based on this section because state agency medical consultant, Cheryl Woodson-Johnson, concluded that Plaintiff was moderately limited in his ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 230). The Court notes that moderate limitations in this area, do not necessarily mean a complete inability to perform in this area, nor does it mean a substantial loss of ability to meet the basic mental demands of unskilled work. Accordingly, the Court find substantial evidence to support the ALJ's decision that Plaintiff can perform simple and unskilled work.

### G.     Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a

-13-

whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as industrial cleaner, a machine tender, and a bindery machine feeder and off-bearer. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence). The Court further finds that the vocational expert's testimony does not conflict with the DOT.

**IV.  Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 24th day of July, 2014.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE